Rosser v. Wagon Wheel, Inc.

J. T. ROSSER & WIFE, DORIS T. ROSSER, HEIRS AT LAW OF THE LATE ATLAS GERALD ROSSER, DECEASED, EMPLOYEE, PLAINTIFFS v. WAGON WHEEL, INC., EMPLOYER; HARTFORD ACCIDENT & INDEMNITY COMPANY, CARRIER, DEFENDANTS

No. 7320IC654

(Filed 26 September 1973)

**Master and Servant § 56— workmen's compensation — employee shot while struggling with policeman**

In this workmen's compensation proceeding, the evidence was sufficient to support the Industrial Commission's determination that the deceased employee, the manager of a drive-in restaurant, was killed by accident arising out of and in the course of his employment when he was shot during an argument and struggle with a police officer in the restaurant parking lot, and that the employee's death was not occasioned by his intoxication.

APPEAL by defendant from an opinion and award of the Industrial Commission filed 12 April 1973.

The parties stipulated that at the time the deceased employee was fatally shot, the parties were bound by the Workmen's Compensation Act and that the employer-employee relationship existed. The parties also stipulated as to employee's average weekly wage and other matters not relevant to this appeal.

The hearing officer, Forrest H. Shuford, II, made findings of fact which include the following:

"1. Deceased employee and his father, J. T. Rosser, owned a drive-in restaurant in Carthage called the 'Wagon Wheel'. Deceased and his father each owned one-half interest in the business with deceased operating the business and acting as its general manager.

"2. The 'Wagon Wheel' was located about two blocks east of the courthouse in Carthage. The restaurant building was set back about sixty feet from the street and faced west. There was a parking lot in front of the restaurant building with two entrances, one to the north side and one to the south side. A warehouse was located adjacent to the street and at the north side of the parking lot.

"3. A part of the regular duty of deceased as general manager of the 'Wagon Wheel' was to 'police' the parking lot and to keep order in the parking lot. On the evening of

Saturday, 5 September 1970, deceased parked his automobile on the south side of the parking lot facing the restaurant building. He kept order at the 'Wagon Wheel' and on one occasion during the evening broke up a scuffle which occurred in the parking lot. The restaurant stayed open until about 1:00 a.m. At approximately 12:50 a.m. on the morning of 6 September 1970 deceased was sitting in his automobile in the parking lot with his former wife, Brenda Rosser, who worked at the 'Wagon Wheel'. Some other persons were also occupying the automobile and they were discussing a new place of business that deceased proposed to establish.

"4. The 'Wagon Wheel' was still open for business at such time. John Chambers, a police officer with the Carthage Police Force drove his police car into the 'Wagon Wheel' parking lot and circled the lot. The officer was accompanied by another person named Cyrus Belle. After circling the lot the officer stopped the police car at the north entrance of the parking lot and near the warehouse. Some automobiles were parked in front of the warehouse with some boys being on the sidewalk near the warehouse. The officer got out of his police car and told the boys to 'clear the area'. As the cars started to leave the officer heard someone in the 'Wagon Wheel' parking lot whistle. He then walked across the lot toward the automobile occupied by deceased. As he approached such automobile deceased got out of his car and he and the police officer met near the center of the south driveway into the parking lot and at a point about fifteen feet from the street.

"5. Upon meeting at such place in the parking lot the deceased accused the police officer of running off his customers. An argument between the two ensued and the officer raised a night stick which he was carrying. Deceased grabbed the night stick and they stood in such position for a considerable period of time with there being more argument between the two men. Deceased and the police officer then began to struggle with each other and a gun which the police officer had pulled from his holster went off and deceased was killed by such gunshot.

"6. At the time of the fatal accident deceased had some alcohol in his blood but he was not drunk and the accident was not occasioned by intoxication of deceased.

"7. At the time of the fatal accident deceased was on the premises of his business and was acting within the course and scope of his employment. He thought that the police officer was running off customers or potential customers of the business and the fatal accident of the deceased arose out of and in the course of his employment with his business."

The Hearing Commissioner concluded that the deceased employee sustained injury by accident arising out of and in the course of his employment and awarded compensation. The full Commission affirmed the award. Defendant appealed.

*Pittman, Staton & Betts by William W. Staton and R. Michael Jones for plaintiff appellees.*

*Teague, Johnson, Patterson, Dilthey & Clay by I. Edward Johnson for defendant appellants.*

VAUGHN, Judge.

Defendant contends that the evidence does not support the findings and conclusions of the Commission and that the Commission erred in failing to find that the death of the employee was occasioned by his intoxication.

Plaintiff offered evidence tending to show the following. The deceased employee, Rosser, and his father each owned one-half of the stock in Wagon Wheel, Inc. Rosser was general manager. He was required to spend a considerable part of his time in the parking lot keeping order, regulating parking and generally observing the business. Rosser had been in the parking lot from about 11:30 p.m. until shortly before he was fatally shot. During most of that time he had been seated in his automobile talking with his former wife, Brenda Rosser, who was also an employee of defendant. A fifteen-year-old customer named Billy Ingram and another friend and customer Van Stanley were also in the automobile during a part of the time. Earlier Stanley and another youth had had an argument on the premises which was terminated when Rosser told the other youth to leave. Brenda Rosser left the automobile because business began to pick up. She testified that she observed Officer John Chambers drive onto the premises, circle the restaurant and park; that she then saw him, nightstick in hand, walk over to a group of boys who were eating. She had just waited on these boys. She

could not hear what was said to the boys. Her testimony continued:

"... When Mr. Chambers turned away, the boys started to leave. After he got rid of the boys he walked back to his car.

I could see from inside the Wagon Wheel and then all of a sudden he got back out and started toward my husband's car and so that is when I started coming outside the Wagon Wheel itself, the grill. I went out the back door. Mr. Chambers was walking from the north side of the walkway of the grill to the south side. As John Chambers was approaching my husband's car, he was getting out. I was watching from inside the Wagon Wheel when John Chambers was walking toward my husband's car and about the time they met I was already outside and they were in the center of the south driveway. They were about fifteen feet from the street. John Chambers was raising a stick at my husband's head. He had the stick in his left hand and Gerald grabbed the stick with his right hand. John Chambers told Gerald Rosser if he didn't turn loose the stick he was going to maul his brains out. Gerald said, 'I don't appreciate you coming here and running my customers off.' Said, 'I think you better get somebody,' and Mr. Chambers said he didn't have to and to turn loose of the stick or he was going to maul his brains out.

As a result of what my husband said, I got somebody to call Mr. Benner, the Chief of Police of Carthage, North Carolina. Steve Childers went to get Chief Benner. I turned around and told Steve to call Mr. Benner and John Chambers told my husband that he was not going. He said he was not going to wake Chief Benner, that he was in uniform and he had authority to run the boys off and he was going to give Gerald one more chance to turn loose of the stick. My husband wasn't doing anything except telling John Chambers to leave. He was not jerking the stick. They were standing still. John Chambers said, 'Now, you turn loose of this stick or I'm going to blow your brains out.' John Chambers raised the gun to Gerald and shot him. He drew the gun from his right side and he just point it at him. He shot Mr. Rosser in the heart."

The testimony of Van Stanley and Billy Ingram, though varying as to some of the details, tended to corroborate that of

Brenda Rosser, including her testimony to the effect that the deceased was not intoxicated.

Defendant offered evidence tending to show: that Chambers was employed through the Community Action Program, had worked for the Carthage Police Department for about five weeks and had no prior police training or experience; that he was being paid by New Careers, Incorporated; that Chambers did not interfere with customers of the drive-in; that the drive-in appeared to be closed and that Chambers spoke to several young boys who were near the premises because he did not want a curfew violation. Defendant offered other evidence tending to show that Rosser was the aggressor in the encounter with Chambers and that Chambers' pistol was accidentally discharged when Rosser slapped him. Defendant offered evidence tending to show that Rosser was intoxicated, including testimony that a sample of Rosser's blood disclosed an alcoholic content of .14 percent.

It is well settled that the Commission's findings of fact are conclusive on appeal if supported by any competent evidence even though there is evidence to support contrary findings. The Commission is the judge of the credibility of the witnesses and the weight to be given the evidence. It is obvious that the Commission saw fit to believe the evidence which was favorable to plaintiff. When this evidence is taken as true it supports the findings of fact and conclusions of the Commission.

Affirmed.

Judges BRITT and HEDRICK concur.